William COLBY; Henry Kissinger, Appellants,

v.

Morton HALPERIN, Appellee.

In the case of ALFRED A. KNOPF, INC., et al.

v.

William COLBY, et al.

No. 80–1721.

United States Court of Appeals, Fourth Circuit.

Argued March 5, 1981.

Decided Aug. 6, 1981.

Alfred Mollin, Appellate Staff, Civil Division, Dept. of Justice, Washington, D. C. (Alice Daniel, Asst. Atty. Gen., Justin W. Williams, U. S. Atty., Leonard Schaitman, Appellate Staff, Civil Division, Dept. of Justice, Washington, D. C., on brief), for appellants.

John Cary Sims, Washington, D. C. (Katherine A. Meyer, Washington, D. C., on brief), for appellee.

Before WINTER, Chief Judge, HAYNSWORTH, Senior Circuit Judge and RUSSELL, Circuit Judge.

HAYNSWORTH, Senior Circuit Judge:

A continuing effort publicly to disclose classified information obtained by Victor Marchetti in his capacity as a highly placed official in the Central Intelligence Agency brings this simmering controversy before us for the third time. This time it is an effort by Morton Halperin, Director of the Center for National Security Studies, to obtain partial relief from a protective order imposed upon him in connection with a permitted disclosure to him of the deleted information in preparation for his appearance as an expert witness. The requested relief was in aid of Halperin's effort to obtain release of such information under the Freedom of Information Act through a proceeding pending in the District of Columbia Circuit. The district court granted the requested relief, and the United States has appealed from so much of the order as authorizes disclosure of the information to a lawyer, Mark Lynch, subject to personal clearance of Lynch by the CIA, whom Halperin wished as an advisor in connection with the District of Columbia proceeding. Since no necessity for any disclosure to Mr. Lynch, much less a compelling necessity, appears, we reverse.

In *United States v. Marchetti*, 466 F.2d 1309 (4th Cir. 1972), we upheld an injunction prohibiting Marchetti's public disclosure of classified information acquired by him during his service with the CIA and requiring him to submit any material intended for publication to prior agency review. Marchetti had solemnly promised in writing not to disclose any such information, and we held him bound by his promise.

Subsequently, Marchetti submitted to the CIA a manuscript which had been prepared by him and John Marks which was intended to be submitted to Alfred A. Knopf, Inc. for publication under the title "The CIA and the Cult of Intelligence." The CIA directed the deletion of 168 items as classified information within Marchetti's non-disclosure promise. Nonetheless, the publisher and authors, in a new proceeding in the district court, sought leave to publish the deleted items and substantially prevailed. In *Alfred A. Knopf v. Colby*, 509 F.2d 1362 (4th Cir. 1975), we reversed. We held that a strict burden to establish the classification and classifiability of each item had been improperly placed upon the Agency, that classified information was not in the public domain unless it had been officially released and that the authors cannot disclose classified information to which they had access during their public service, even though they may have acquired such information elsewhere.

During the trial of the *Knopf* case in the district court, Morton Halperin, a former employee of the National Security Council, had appeared as an expert witness for the plaintiffs. In preparation for his testimony, he was permitted access to the deleted portions of the Marchetti manuscript and was bound by a protective order imposed by the district court.

In April 1980, the Center for National Security Studies, of which Halperin is the Director, and Monica Andres, its librarian, instituted an action in the District Court for the District of Columbia against the CIA seeking release of the deleted Marchetti items under the Freedom of Information Act and related statutes. *See Andres v. Central Intelligence Agency*, No. 80–0865 (D.D.C.1980). Halperin then returned to the District Court for the Eastern District of Virginia seeking partial relief from the restrictive order. He stated that the CIA had filed a motion for summary judgment in *Andres* with an affidavit describing, but not disclosing, the deleted information. Halperin stated that he wished to serve as an expert witness for the *Andres* plaintiffs and to offer a counter-affidavit in opposi-

tion to the government's summary judgment motion. Specifically, he sought leave to prepare and proffer under seal to the *Andres* court a counter-affidavit and to participate in relevant *in camera* proceedings in the *Andres* case. He also sought permission to disclose the information to Mr. Mark Lynch in order to secure the advice and assistance of that lawyer in the preparation and submission of the affidavit.

The requested modification of the protective order was granted, though disclosure of the information to Lynch and his participation in the preparation of the affidavit were conditioned upon his obtaining security clearance from the CIA. In the district court the United States opposed any modification of the protective order, but it has appealed only from that portion of the order which conditionally authorizes disclosure of the information to Mr. Lynch. Meanwhile, by virtue of the modification, Halperin prepared an affidavit, without the assistance of counsel, but with stenographic assistance provided by the CIA. That affidavit was submitted under seal to the District Court for the District of Columbia in the *Andres* case.

In *Knopf* we expressed our concern about the disclosure of sensitive information to lawyers, judges, court reporters, expert witnesses and others. "It is not to slight judges, lawyers, or anyone else," we said, "to suggest that any such disclosure carries with it the serious risk that highly sensitive information may be compromised. In our own chambers we are ill-equipped to provide the kind of security highly sensitive information should have." *See Knopf, supra*, at 1369. Disclosure to one more person, particularly to one found by the CIA to be a person of discretion and reliability, may seem of no great moment, but information may be compromised inadvertently as well as deliberately. Our reference in *Knopf* to our own sense of inadequacy to provide the kind of security such sensitive information requires strongly suggests that no one should be given access to such information who does not have a strong, demonstrated need for it.

In *Knopf* we recognized that the principle of non-disclosure may give way in particular circumstances in the face of "compelling necessity," subject, of course, to appropriate protective devices and procedures. The whole thrust of our earlier cases, however, is to the effect that there should be no authorized disclosure to anyone in the absence of a demonstration of a strong necessity for it. Here Halperin has demonstrated no need whatever for presently granting Lynch access to the deleted items.

At the time of the hearing in the district court, there was no indication that Judge Gasch, to whom the *Andres* case had been assigned, would look at or consider any affidavit tendered under seal by Halperin. A motion for summary judgment was pending, so at that time there was no indication that Judge Gasch would listen to the testimony of Halperin or of any other expert witness. If Judge Gasch were willing to consider an affidavit tendered by Halperin, there was no indication that he would be helped if Halperin had legal assistance in its preparation. In short, there was no indication from Judge Gasch that resolution of the *Andres* litigation would be assisted in any way by relaxation of the protective order.

We are now informed by Mr. Halperin's attorney in this case that on April 28, 1981, Judge Gasch entered summary judgment for the defendant in the *Andres* case. He supplied us with a copy of the memorandum filed by Judge Gasch in that case in which Judge Gasch concluded that he had no need to look at the Halperin affidavit which had been tendered to him under seal. We are informed that the *Andres* plaintiffs intend to appeal to the Court of Appeals for the District of Columbia Circuit. That case may not be over, but the pendency of the *Andres* case presents no present need for any relaxation of the protective order in this case and does not provide a firm prediction of any future need for any such relaxation.

Assessments of the need for Halperin's affidavit or testimony and, in turn, of Halperin's need for the assistance of counsel and the consequent need for relaxation of the protective order in this case present interrelated problems in two separate courts which cannot be resolved by one court acting alone. A procedure comparable to that outlined in *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979), would be useful. If it had first been determined by the Judge in the *Andres* case that there was a need for Halperin's affidavit and that the quality of the affidavit could be substantially improved if prepared with the assistance of counsel, the Judge in this case could have been provided with a basis for weighing the need in the District of Columbia Circuit for additional information against the need to prevent future disclosure of the deleted items in the absence of compelling need. If Judge Gasch had found some such need and had described its dimensions, the relative weight of the conflicting needs could have been determined by the district court in this case. Without such a preliminary determination by Judge Gasch, the need to avoid future disclosure of the deleted items required a simple rejection of Halperin's application in its entirety.

To the extent that the modified order conditionally authorized access by Lynch to deleted material, it is reversed, subject to reconsideration in the district court only if the *Andres* litigation should result in a determination of substantial need in the District of Columbia Circuit for additional information.

*REVERSED.*